# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

HomeStar Property Solutions, LLC

     Plaintiff,

v.

Safeguard Properties, LLC and
Bank of America, N.A.,

     Defendants

Safeguard Properties, LLC

     Counter Claimant,

v.

Express Lien, Inc., doing business as
zLien, Inc., doing business as zLien,

and

HomeStar Property Solutions, LLC

     Counter Defendants.

**No. 14-cv-4531 (SRN/SER)**

**ORDER AND**
**REPORT AND RECOMMENDATION**

---

     William M. Topka, Esq., Dougherty, Molenda, Solfest, Hills & Bauer, PA, Apple Valley, Minnesota, for HomeStar Property Solutions, LLC.

     Joseph J. Santoro, Esq., Gallagher Sharp, Cleveland, Ohio, for Safeguard Properties, LLC.

     Lauren Allison D'Cruz, Esq., Lind Jensen Sullivan & Peterson, PA, Minneapolis, Minnesota, for Safeguard Properties, LLC.

     Courtney G. Sylvester, Esq., Nilan Johnson Lewis PA, Minneapolis, Minnesota, for Express Lien, Inc.

STEVEN E. RAU, United States Magistrate Judge.

The above-captioned case comes before the undersigned on Defendant Safeguard Properties Management, LLC's ("Safeguard") Motion for Leave to File Supplemental Counterclaim ("Motion to Add Counterclaim") [Doc. No. 31], which was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court denies the Motion to Add Counterclaim.

This case is also before the undersigned on Counter Defendant Express Lien, Inc., d/b/a zLien's Motion for Judgment on the Pleadings [Doc. No. 43], which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), and District of Minnesota Local Rule 72.1. (Order of Referral Dated Apr. 30, 2015) [Doc. No. 49].[1] For the reasons stated below, the Court recommends granting in part and denying in part the Motion for Judgment on the Pleadings.

I.    BACKGROUND

A.    Factual Background

"Safeguard provides preservation and repair services to defaulted, foreclosed, and bank-owned real property." (Compl.) [Doc. No. 1 ¶ 13]. In 2012, Safeguard purchased Defendant Bank of America, N.A.'s ("BOA") field-service operations arm, leading to a significant increase in homes that required Safeguard's repair and preservation services. (*Id.* ¶¶ 14–17). In order to respond to the increased demand for services, Safeguard hired Plaintiff HomeStar Property Solutions, Inc. ("Homestar") "to provide repair, remediation, and maintenance services on thousands of defaulted or foreclosed properties in at least 30 states (including Minnesota) and the

---

[1]    The Honorable Michael J. Davis, Chief Judge, referred the motion to the undersigned. (Order of Referral Dated Apr. 30, 2015). The case has since been reassigned to the Honorable Susan Richard Nelson. *See* (Order of Recusal Dated Nov. 10, 2015) [Doc. No. 76].

District of Columbia[,]" often on an emergency basis. (*Id.* ¶¶ 18–22). Safeguard understood that Homestar would hire subcontractors to perform the required services, and that Homestar relied on Safeguard's prompt payment of invoices to allow Homestar to pay its subcontractors. *See* (*id.* ¶¶ 23–25). The payment process involved a system of codes, bids, and photographs of completed projects communicated between Safeguard and Homestar to determine payment. *See* (*id.* ¶¶ 27–56). Safeguard knew that because of the high volume of requests for service, it was not possible for Homestar to respond to every request or adhere to all of Safeguard's strict deadlines. (*Id.* ¶¶ 57–61). As a result, Safeguard assessed "back charges or late fees against [Homestar's] invoices." (*Id.* ¶ 62).

Safeguard used poor bookkeeping practices, which required Homestar to upload photographs and invoices to Safeguard's database multiple times. (*Id.* ¶¶ 63–66). These bookkeeping practices caused significant nonpayment or underpayment problems for Homestar. (*Id.* ¶ 67).

In August 2013, a Safeguard representative, Paul Dinehart ("Dinehart"), acknowledged that Safeguard owed Homestar $1.7 million. (*Id.* ¶ 69). In November 2013, Dinehart told Homestar it "would catch up on its payments . . . within a few weeks." (*Id.* ¶ 70). Safeguard and Homestar reached an agreement regarding the amount Safeguard owed for special projects. (*Id.* ¶ 71). Nonetheless, as of March 2014, Safeguard still remained behind on payments, leading Homestar to terminate its agreements and demand full payment. (*Id.* ¶¶ 72–73).

Because of Safeguard's failure to pay Homestar, Homestar stopped paying its subcontractors for Safeguard work. (*Id.* ¶ 76). This damaged the relationships between Homestar and its subcontractors, and subcontractors reported hardship due to nonpayment. (*Id.* ¶ 76–78).

Homestar's reputation suffered, in that some contractors refuse to work with Homestar and sued Homestar, and Homestar has lost business. (*Id.* ¶ 78).

Safeguard and BOA refused to pay invoices totaling more than $1.7 million. (*Id.* ¶ 79). Homestar initiated this lawsuit in October 2014, alleging claims for breach of contract, unjust enrichment, promissory estoppel, and accounts stated against Safeguard, and alleging an unjust enrichment claim against BOA. (*Id.* ¶¶ 80–119). Safeguard and BOA answered the Complaint in December 2014. (BOA's Answer to Pl.'s Compl.,) [Doc. No. 8]; (Safeguard's Answer to Pl.'s Compl.) [Doc. No. 10].

Safeguard filed an amended answer in January 2015, alleging counterclaims against Homestar for declaratory relief, breach of contract, unjust enrichment, tortious interference with business relationships, and tortious interference with contractual relationships. (Safeguard's Am. Answer to Pl.'s Compl. & Safeguard's Verified Countercl. against Homestar and New-Party Countercl. and Defendant Express Lien, Inc., "Am. Answer & Countercl.") [Doc. No. 17 at 29–36].

Safeguard also alleged counterclaims against a new party, zLien. Homestar used zLien, a third-party vendor, to file mechanics' liens on Homestar's behalf, and Safeguard alleges all mechanics' liens were filed after the statutory deadline imposed by the respective states in which those liens were filed. (*Id.* at 27–28). Safeguard alleges that the mechanics' liens are invalid on their face and also a violation of the contractual agreement between Safeguard and Homestar. (*Id.* at 28). Safeguard's counterclaims against zLien include declaratory relief, tortious interference with business relationships, tortious interference with contractual relationships, and unauthorized practice of law. (*Id.* at 29–37).

Safeguard filed its Motion to Add Counterclaim on April 1, 2015, and zLien filed its Motion for Judgment on the Pleadings on April 27, 2015. The Court heard oral argument on both motions on June 4, 2015. (Minute Entry Dated June 4, 2015) [Doc. No. 55].

## II.    MOTION TO ADD COUNTERCLAIM

After Safeguard filed its Amended Answer and Counterclaim, Safeguard learned that Homestar subcontractor Northsight Management, LLC ("Northsight") sued Homestar for its failure to pay for Northsight's services in the United States District Court for the Southern District of Ohio.[2] (Safeguard's Mem. in Supp. of Mot. to Add Countercl., "Safeguard's Mem. in Supp.") [Doc. No. 33 at 3]. In that lawsuit, Northsight requested and received the court's permission to file a supplemental complaint alleging claims of fraudulent transfer against Homestar, Homestar Field Services, LLC ("HFS"), and Michael Breese ("Breese"). (*Id.*). Northsight's motion was based on the affidavit of Josh Sarchet ("Sarchet"), Northsight's president. (*Id.*). In the affidavit, Sarchet recounts a conversation he had with Breese, Homestar and HFS's chief executive officer, on December 4, 2014. (Ex. A, Aff. of Josh Sarchet, "Sarchet Aff.," Attached to Exs. to Safeguard's Mem. in Supp.) [Doc. No. 34-1 ¶ 17]. Breese told Sarchet Homestar owed Safeguard $2.8 million, and owed $650,000 to other companies. (*Id.* ¶ 19). Breese said that he mismanaged Homestar, and investors were not willing to invest in it because of lawsuits and outstanding debt. (*Id.* ¶ 21). Breese created a new limited liability company for investors to fund and transferred assets into it; he told Sarchet there is no money in Homestar. (*Id.* ¶¶ 22–23). Sarchet learned that Breese created a new limited liability company using the name HFS, whose description of services is exactly the same as Homestar's description of services. *See* (*id.* ¶¶ 26, 28–29).

---

[2]     *See Northsight Management, LLC v. Homestar Property Solutions, LLC*, No. 2:14-cv-1243 (S.D. Ohio)

Safeguard now moves to file a supplemental counterclaim against Homestar for claims of fraudulent transfer and civil conspiracy, and to add HFS, Breese, ten unnamed individuals, and ten unnamed companies as defendants. (Safeguard's Mem. in Supp. at 3–4).

### A.     Legal Standard

Federal Rule of Civil Procedure 15(d) governs supplemental pleadings and states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

The Court has broad discretion to determine whether a supplemental pleading is permissible. *Minn. Min. Mfg. Co. v. Superior Insulating Tape Co.*, 284 F.2d 478, 481 (8th Cir. 1960). "A party should not be permitted to supplement a pleading where the supplementation would hinder judicial efficiency, prejudice the rights of other parties to the action, or would insert a frivolous claim." *Schneeweis v. Nw. Tech. College*, No. Civ. 97-1743 (JRT/RLE), 1998 WL 420564, at *13 (D. Minn. June 1, 1988) (Erickson, Mag. J.) (citing *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *Cohen v. Reed*, 868 F. Supp. 489, 497 (E.D.N.Y. 1994)).

### B.     Analysis

Safeguard's proposed supplemental counterclaim arises out the conversation between Sarchet and Breese on December 4, 2014. (Sarchet Aff. ¶ 17). Safeguard filed its Amended Answer and Counterclaim on January 5, 2015. (Am. Answer & Countercl.). It did not learn about the conversation between Sarchet and Breese until Northsight, a party in the Ohio case, filed Sarchet's affidavit on January 15, 2015. (Safeguard's Mem. in Supp. at 5). Thus, Safeguard seeks to file a supplemental counterclaim to address an event that took place after the filing of its initial counterclaim. *See* Fed. R. Civ. P. 15(d).

Nonetheless, the Court finds permitting Safeguard to file a supplemental counterclaim would hinder judicial efficiency and would be unfair to Homestar. *See Schneeweis*, 1998 WL 420564, at *13. Homestar and Safeguard's dispute arises out of their business relationship in which Safeguard hired Homestar to provide repair, remediation, and maintenance services on defaulted and foreclosed properties. *See, e.g.*, (Compl. ¶¶ 18–22). Whether Homestar then fraudulently transferred its assets is an issue based on events completely separate from Homestar's relationship with Safeguard. In fact, Homestar's transfer has nothing to do with Safeguard, other than Safeguard's position as a creditor.[3] To allow Safeguard's supplemental counterclaim would fundamentally change the nature of the case and would, in effect, require two distinct lawsuits to be litigated in the same case.

Safeguard argues it would be prejudiced if it is not allowed to file the supplemental counterclaim because "if it is awarded a judgment against [Homestar], that judgment may be worth nothing if all of [Homestar's] assets have been transferred to HFS." (Safeguard's Mem. in Supp. at 6). While this may be true, this argument further highlights that Safeguard's interest in the ultimate destination of Homestar's assets is speculative. If Safeguard is successful in obtaining a judgment against Homestar, the appropriate time to engage in litigation about Homestar's assets is after any such judgment is entered.

Safeguard's Motion to Add Counterclaim is denied.[4]

---

[3] Assuming Minnesota law applies, a creditor is "a person that has a claim" under the Minnesota's Uniform Voidable Transaction Act. Minn. Stat. § 513.41(4).

[4] Because the Court's analysis is grounded in judicial efficiency, the Court need not address the viability of Safeguard's proposed supplemental counterclaims or this Court's jurisdiction, as argued by Homestar. *See generally* (Pl.'s Mem. of Law in Resp. to Safeguard's Mot. to Add Countercl.) [Doc. No. 40].

### III.    MOTION FOR JUDGMENT ON THE PLEADINGS

zLien moves for judgment on the pleadings, asking this Court to dismiss Safeguard's counterclaims against it for declaratory judgment, tortious interference with business relationships, tortious interference with contractual relationships, and unauthorized practice of law. *See generally* (zLien's Mem. of Law in Supp. of its Mot. to Dismiss, "zLien's Mem. in Supp.") [Doc. No. 45].[5]

### A.    Legal Standard

When considering a motion for judgment on the pleadings under Rule 12(c), a court "applies the same standard used to address a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 775 (D. Minn. 2009) (Schiltz, J.) (citing *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir.2009)).

> Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."

*Id.* (internal citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court "does not defer to any legal conclusions or formulaic recitations of the claims' elements." *Folger v. City of Minneapolis*, 43 F. Supp. 922, 929 (D. Minn. 2014) (Nelson, J.) (citing *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1027 (8th Cir. 2011)).

A motion for judgment on the pleadings is appropriate "when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings and related materials." *Id.* (internal quotations marks

---

[5]    Despite the title of zLien's memorandum, it moves for judgment on the pleadings. (Mot. for J. on the Pleadings).

omitted). "A fact is material if its determination in favor of the non-moving party could affect the result in the case." *Jenkins v. S. Farm Bureau Cas.*, 307 F.3d 741, 744 (8th Cir. 2002); *see also King v. Dingle*, 702 F. Supp. 2d 1049, 1063 (D. Minn. 2010) (Montgomery, J., adopting the report and recommendation of Erickson, Mag. J.) ("A disputed fact is 'material,' if it must inevitably be resolved, and that resolution will determine the outcome of the case.").

**B.     Analysis**

**1.     Agency**

zLien argues that an overarching justification for judgment on the pleadings is that zLien is not a proper defendant because it acted as a disclosed agent on behalf of Homestar. (zLien's Mem. in Supp. at 6–9). zLien asks the Court to consider its terms of use in support of its assertion that it was merely acting as Homestar's agent and did not take any independent action. (*Id.* at 7–8).

When a court considers matters outside the pleadings on a motion for judgment on the pleadings, that motion must be considered as one for summary judgment. *Surgical Synergies, Inc. v. Genesee Assoc., Inc.*, 432 F.3d 870, 873 (8th Cir. 2005) (citing Fed. R. Civ. P. 12(c)); *see also* Fed. R. Civ. P. 12(d). "Matters outside the pleadings" include, *inter alia*, "any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (internal quotation marks omitted). A court may, however, consider matters outside the pleadings such as "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (internal quotation marks omitted).

zLien does not specify whether its terms of use are public record, do not contradict the counterclaim, or are necessarily embraced by the pleadings. *See* (zLien's Mem. in Supp. at 7). The Court excludes zLien's terms of use from consideration. Because Safeguard's counterclaim does not refer to zLien's terms of use or attach it, the Court declines to consider it embraced by the pleadings. *See generally* (Am. Answer & Countercl.). zLien's terms of use clearly contradict the counterclaim, as zLien attempts to use it to argue it is not a proper defendant. (zLien's Mem. in Supp. at 6–9). Finally, a commercial website is not a public record. Public records are typically government-provided records. *See, e.g.*, *Smith v. Wells Fargo Bank, N.A.*, No. 13-cv-0439 (SRN/TNL), 2013 WL 5720150, at *2 n.2 (D. Minn. Oct. 21, 2013) (Nelson, J.) ("[T]he Court may properly consider the list of legal newspapers found on the Minnesota Secretary of State's website because it is a public record."); *Shiraz Hookah, LLC v. City of Minneapolis*, No. 11-cv-2044 (PJS/JJK), 2011 WL 6950483, at *5 n.6 (D. Minn. Dec. 30, 2011) (Schiltz, J.) ("This document [, a Request for City Council Committee Action,] is a public record and is available at the City's website."); *Rasmusson v. Chisago County*, 991 F. Supp. 2d 1065, 1071 n.5 (D. Minn. 2014) (Nelson, J.) ("The Court may properly consider the document obtained from the [Minnesota Department of Public Safety] website because it is a public record."). Further, zLien provides its terms of use for the sole purpose of contradicting the allegations in Safeguard's complaint. Therefore, the Court declines to consider zLien's terms of use. *See Hemingway v. First Nat'l Ins. Co. of Am.*, No. 13-cv-3379 (JRT/JJG), 2015 WL 2864919, *4 (D. Minn. June 24, 2014) (Tunheim, J.) ("To counter Plaintiffs' claim that a principal-agent relationship existed between Marx and Defendant, Defendant provides documents such as screenshots from Sterling's website and Sterling's agency agreement with Safeco Insurance. These documents are not matters of public record or embraced by the pleadings, and Defendant has provided them for

the precise purpose of contradicting allegations in the amended complaint. As such, the Court must exclude the materials from consideration.").

zLien raises its agency argument, in essence, as an affirmative defense. *See* (zLien's Mem. in Supp. at 6–9). An affirmative defense may be grounds for granting judgment on the pleadings if the affirmative defense is apparent on the face of Safeguard's counterclaim. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2014). The Court finds that zLien's status as Homestar's agent is not apparent from the face of Safeguard's counterclaim. Safeguard notes that zLien acted on Homestar's behalf when filing the mechanics' liens that form the basis of Safeguard's counterclaim against zLien. (Am. Answer & Countercl. at 29). That fact, however, does not necessarily mean that zLien will be able to avoid liability because, in Minnesota, an agent can be held individually liable for its torts. *See Graff v. Robert M. Swendra Agency, Inc.*, 776 N.W.2d 744, 749 (Minn. Ct. App. 2009) (citing Restatement (Third) of Agency § 7.01 (Am. Law Inst. 2006)). In other words, if zLien is found to have committed a tort, it may be liable for those actions regardless of its alleged agency relationship with Homestar. *See id.* ("'It is ordinarily immaterial to an agent's liability that the agent's tortious conduct may, additionally, subject the principal to liability.'" (quoting Restatement (Third) of Agency § 7.01 (Am. Law Inst. 2006))). Thus, a material fact dispute exists with respect to the scope of any agency relationship between Homestar and zLien and any liability arising out of that relationship. *See Folger*, 2014 WL 4187504, at *3.

Therefore, to the extent zLien argues it is an improper defendant because it acted as Homestar's agent, the Court recommends zLien's Motion for Judgment on the Pleadings be denied.

### 2.    Declaratory Judgment

With respect to Safeguard's declaratory judgment claim, the parties agree that the fourteen original mechanics' liens on which this claim is premised have been or are in the process of being discharged.[6] (zLien's Mem. in Supp. at 5–6); (Safeguard's Mem. of Law in Opp'n to zLien's Mot. for J., "Safeguard's Mem. in Opp'n") [Doc. No. 52 at 9] (stating that "although . . . the facially invalid mechanics' liens have been released, neither [zLien] nor Homestar [have] made any assurance that invalid mechanics' liens will not be filed in the future." ); (zLien's Reply Mem. of Law in Supp. of its Mot. to Dismiss, "zLien's Reply") [Doc. No. 54 at 3] ("The parties appear to be agreement that the liens at issue have been released."). Nonetheless, the Court must examine whether Safeguard has stated a declaratory judgment claim based not only on the facial invalidity of the liens, but also on Safeguard's allegation that, absent an injunction, zLien will continue to file mechanics' liens against other properties with which the parties are involved. *See* (Am. Answer & Countercl. at 29).

Safeguard argues it "has suffered and continues to suffer irreparable harm as a direct and proximate result of Homestar's and zLien's misconduct." (*Id.* at 31). Further, Safeguard alleges that "[d]espite the facial invalidity of the Homestar mechanics' liens, Homestar and zLien allow existing mechanics' liens to remain in place and continue[] to file additional mechanics' liens." (*Id.*). Thus, even though the specifically identified mechanics' liens are no longer at issue, this claim is not moot because Safeguard's allegations include continuing conduct. *See, e.g.*, (*id.*). Whether the discharged mechanics' liens were facially invalid is material to Safeguard's claims that zLien will continue to file mechanics' liens.

---

[6]    For this reason, the Court need not address any issue with respect to judicial notice of public records related to the discharge of the mechanics' liens. *See* (zLien's Mem. in Supp. at 5–6).

With respect to its declaratory judgment claim, zLien only argues that judgment on the pleadings is appropriate because the identified liens are discharged or released; zLien ignores Safeguard's allegations of continuing conduct.[7] *See* (zLien's Mem. in Opp'n at 6). Therefore, the Court recommends that zLien's Motion for Judgment on the Pleadings be denied with respect to Safeguard's declaratory judgment counterclaim.

### 3.     Tortious Interference Claims

Under Minnesota law, a claim for tortious interference with business relationships has five elements:

1)     The existence of a reasonable expectation of economic advantage;
2)     Defendant's knowledge of that expectation of economic advantage;
3)     That defendant intentionally interfered with plaintiff's reasonable expectation of economic advantage, and the intentional interference is either independently tortious or in violation of a state or federal statute or regulation;
4)     That in the absence of the wrongful act of defendant, it is reasonably probable that plaintiff would have realized his economic advantage or benefit; and
5)     That plaintiff sustained damages.

*Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

To establish a claim for tortious interference with a contract, Safeguard must prove "'(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1043 (D. Minn. 2013) (Tunheim, J.) (quoting *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998)).

---

[7]     The Court need not address zLien's argument about the ineffectiveness of any potential injunction against it because that argument is related to whether injunctive relief is appropriate, not whether the claim has been adequately pleaded. *See* (zLien's Reply at 3–5).

Safeguard alleges zLien was aware of Safeguard's "existing and prospective business relationships," including, but not limited to the relationship with Homestar, mortgagees, mortgage servicers, and other financial institutions in the mortgage industry and that zLien was aware of Safeguard's "existing and prospective contractual relationships." (Am. Answer & Countercl. at 35, 36). zLien "intentionally and improperly interfered" with these relationships by "filing invalid mechanics' liens against properties at which Homestar and its subcontractors performed mortgage field services on behalf of Safeguard." (*Id*. at 35, 36).

The Court finds Safeguard's allegations do not "'raise a right to relief above the speculative level.'" *See Riley*, 625 F. Supp. 2d at 775 (quoting *Twombly*, 550 U.S. at 555). Safeguard's counterclaim does not make more than conclusory allegations about zLien's knowledge of Safeguard's prospective business relationships and contracts. *See* (Am. Answer & Countercl. at 35, 36). The specific factual allegations offered in support of the counterclaim provide no factual basis for these claims. *See* (*id*. at 27–29). The factual allegations discuss zLien's allegedly invalid mechanics' liens, but consistently identify Homestar as the primary actor, and do not allege that zLien has knowledge independent from or in addition to any knowledge that Homestar may have. *See* (*id.*). In fact, the tortious interference claims are also alleged against Homestar. (*Id.*). Thus, to the extent Safeguard alleges zLien knew of Safeguard's prospective business relationships or contracts, Safeguard's allegations are speculative at best and are part of a formulaic recitation of each of the elements of the tortious interference claims. *See Folger*, 2014 WL 4187504, at *3. Similarly, Safeguard's allegations that zLien intentionally interfered with prospective business relationships or intentionally procured the contracts without justification are conclusory and not supported by factual allegations that zLien's actions were made with the requisite intent for each tort.

Because both tortious interference claims require zLien's knowledge of the relationships with which it interfered—whether a prospective business relationship or an existing contractual relationship—and Safeguard's counterclaim is not sufficiently pleaded in that respect, the Court recommends that zLien's Motion for Judgement on the Pleadings be granted with respect to Count Four, tortious interference with business relationships, and Count Five, tortious interference with contractual relationships. Because the Court finds Safeguard's allegations with respect to these claims are conclusory, and because the missing information is arguably within Safeguard's possession and control, the Court recommends that the claims be dismissed without prejudice and Safeguard be permitted to file an amended counterclaim within thirty days of an order adopting this recommendation.

### 4. Unauthorized Practice of Law

Safeguard alleges three zLien employees prepared, executed, and filed mechanics' liens on behalf of Homestar, and therefore, engaged in the unauthorized practice of law. (Am. Answer & Countercl. at 37). Further, Safeguard alleges that zLien is "vicariously liable for the tortious conduct of its employees." (*Id.*).

### a. Minnesota

Minnesota Statute section 481.02, subdivision 1 prohibits a person who is not a licensed, admitted attorney in Minnesota to engage in the practice of law. Relevant to this case, the statute prohibits "acting as [an] attorney" and "furnishing to others the services of a lawyer." Minn. Stat § 481.02, subdiv. 1. The statute permits, however, a person or corporation to "draw" "farm or house leases, notes, mortgages, chattel mortgages, bills of sale, deeds, assignments, satisfactions, or any other conveyances except testamentary dispositions and instruments of trust[.]" *Id.*, subdiv. 3(8). A person or corporation that violates this statute is guilty of a misdemeanor. *Id.*,

subdiv. 8(a). Further, the "public and private penalties and remedies in section 8.31 apply to violations of this section." *Id.*, subdiv. 8(c). The relevant portion of Minnesota Statute section 8.31, known as the "Private Attorney General statute,"[8] in turn, states that:

> In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Minn. Stat. § 8.31, subdiv. 3a.

To the extent zLien argues there is no private right of action for a claim for the unauthorized practice of law, its argument fails. Minnesota recognizes this type of claim between private parties. *See Cardinal v. Merrill Lynch Realty/Burnet, Inc.*, 433 N.W.3d 864, 864, 869–70 (Minn. 1988) (reviewing trial judgment in favor of plaintiffs for violation of Minn. Stat. §§ 481.02 and 8.31 and finding no evidence supported claim that defendant engaged in the unauthorized practice of law).

Recent cases make clear, however, that the Private Attorney General statute requires that the claimant allege a public benefit. *Ly*, 615 N.W.2d at 314. Safeguard does not allege a public benefit for its unauthorized practice of law claim. *See* (Am. Answer & Countercl. at 37–38). Further, the Court cannot discern a public benefit from Safeguard's allegations. Safeguard's allegations arise out of zLien's filing of mechanics' liens and seek damages for Safeguard only. (*Id*. at 38). Safeguard's other claims and factual allegations related to zLien only implicate Safeguard, Homestar, and their business partners. (*Id*. at 27–28, 29–33, 35–36). Thus, because Safeguard does not allege a public benefit and because no public benefit can be inferred from its counterclaim, the Court recommends zLien's Motion for Judgment on the Pleadings be granted

---

[8]     *See Ly v. Nystrom*, 615 N.W.2d 302, 304 (Minn. 2000).

with respect to Safeguard's claim for unauthorized practice of law in Minnesota.[9] *Cf. Select Comfort Corp. v. Tempur Sealy Intern'l, Inc.*, 11 F. Supp. 3d 933, 939 (D. Minn. 2014) (Frank, J.) ("Plaintiff has failed to make sufficient allegations in this case to show a public benefit. Plaintiff makes only general and conclusory allegations that the public would benefit from its action.").

### b.    Other Jurisdictions

zLien argues Safeguard's claims for the unauthorized practice of law in states other than Minnesota must be dismissed because this Court lacks specific and general jurisdiction. (zLien's Mem. in Supp. at 16–17). Safeguard argues this Court should exercise supplemental jurisdiction over these state law claims. (Safeguard's Mem. in Opp'n at 20–21).

The Court first determines whether the exercise of supplemental jurisdiction is appropriate. A court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 820 (8th Cir. 2001) (quoting 28 U.S.C. § 1367(a)). There are, however, several exceptions. If jurisdiction is based on diversity, there is no supplemental jurisdiction when a person was made a party through impleader, compulsory joinder, permissive joinder, or intervention if the exercise of supplemental jurisdiction would be inconsistent with the requirements of diversity jurisdiction. 28 U.S.C. § 1367(b). Further, a Court may decline to exercise supplemental jurisdiction if:

    (1)    the claim raises a novel or complex issue of State law,
    (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[9]    For this reason, the Court need not address zLien's allegation that its filing of a mechanics' lien is a conveyance under Minnesota law and is therefore exempt from the statute governing the unauthorized practice of law. *See* (zLien's Mem. in Supp. at 15–16).

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The unauthorized practice of law claim may fall within this Court's supplemental jurisdiction. Nevertheless, the threshold question of whether the unauthorized practice of law claim is part of the same "case or controversy" is a close one. *See* 28 U.S.C. § 1367(a). Safeguard implies this Court has original jurisdiction over its counterclaims against Homestar.[10] *See* (Safeguard's Mem. in Opp'n at 20–21). In other words, the "case or controversy" in this action is the deterioration of the relationship between Homestar and Safeguard and the resulting damages. *See* (Compl.); (Am. Answer & Countercl.). Thus, because the Court has jurisdiction over Safeguard's claims against Homestar, the Court arguably likewise has supplemental jurisdiction over the unauthorized practice of law claim because Safeguard argues zLien practiced law when it filed the mechanics' liens at issue, which contributed to the deterioration of the relationship between Homestar and Safeguard. (Am. Answer & Countercl. at 37).

Even if the Court has supplemental jurisdiction, however, the Court recommends declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2) because the unauthorized practice of law claim is a claim that will substantially predominate over Safeguard's counterclaim. As a threshold issue, the Court notes that Safeguard alleges zLien practiced law when it filed mechanics' liens on behalf of Homestar in thirteen different states.[11]

---

[10]     The Court has diversity jurisdiction over Safeguard's claims against Homestar. The parties are diverse, and Safeguard alleges damages over $75,000 for each claim against Homestar except its declaratory judgment claim. (Am. Answer & Countercl. at 21, 29–36).

[11]     Because the Court recommends the dismissal of the unauthorized practice of law claim premised on Minnesota law, it does not include Minnesota in this total. Nonetheless, even if the Minnesota claim remained, the Court's analysis would be the same.

(Am. Answer & Countercl. at 37). In other words, Safeguard's unauthorized practice of law claim is actually thirteen separate claims that require a detailed inquiry into the law of each state. The parties own briefing demonstrates how divergent the law is in each state. For example, the parties dispute whether a mechanics' lien is a conveyance under Minnesota law, which affects whether zLien's conduct is exempt from the Minnesota statute governing the unauthorized practice of law. (zLien's Mem. in Supp. at 15–16); (Safeguard's Mem. in Opp'n at 15–19). Similarly, the parties dispute the impact of an Ohio case stating "'Preparing an affidavit for mechanic's lien or in satisfaction of mechanic's lien is the unauthorized practice of law.'" (Safeguard's Mem. in Opp'n at 20) (quoting *Ohio State Bar Ass'n v. Lienguard, Inc.*, 934 N.E.2d 337, 340 (Ohio 2010)); *see* (zLien's Reply at 17–18).

Homestar and Safeguard's dispute arises out of their contractual and implied obligations to each other and their alleged failures to satisfy those obligations. *See* (Compl.); (Am. Answer & Countercl.). The actions zLien employees took to file the mechanics' liens are not related to this dispute. In other words, "in terms of proof" and in terms "of the scope of the issues raised," the thirteen state law issues arising out of the unauthorized practice of law claim would predominate over Safeguard's dispute with Homestar, and these matters are better "left for resolution to state tribunals." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966);[12] *cf. Allstate*, 730 F.3d at 73–74 (stating that "both the Allstate-Stonestreet dispute and the Stonestreet-Weybosset dispute arose from the contracts relating to the same construction project" and "both sets of claims thus depend on the same body of evidence and sought a similar legal remedy in the form of contractual damages.").

---

[12]    28 U.S.C. § 1367 codifies *Gibbs* and other Supreme Court precedent. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997); *see also Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 730 F.3d 67, 73 (1st Cir. 2013).

The Court concludes the state law issues in Safeguard's unauthorized practice of law claim against zLien substantially predominate over Safeguard's counterclaim against Homestar, and therefore, the Court recommends declining to exercise supplemental jurisdiction over the unauthorized practice of law claim. Therefore, the Court recommends dismissing the remainder of the state law claim for the unauthorized practice of law without prejudice as it relates to claims arising out of the laws of Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Massachusetts, New York, Ohio, Pennsylvania, and Texas.[13] *See* (Am. Answer & Countercl. at 37).

### 5.    Propriety of Counterclaim

Finally, zLien argues Safeguard should have filed a third-party complaint instead of a counterclaim, and for this reason, the counterclaim should be dismissed. (zLien's Mem. in Supp. at 19). Specifically, zLien argues Federal Rule of Civil Procedure 14(a)(1), permitting a defendant to serve a summons and complaint on a third party, governs. (*Id.* at 18–19). zLien further contends that Safeguard failed to move the Court under this rule and failed to timely file its so-called counterclaim. (*Id.*). Safeguard argues it joined zLien in its counterclaim against Homestar pursuant to Rule 20 through its Amended Answer and Counterclaim, for which it received the Court's permission. (Safeguard's Mem. in Opp'n at 22).

Rule 14 permits a defending party to serve as a third-party plaintiff by serving " summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the

---

[13]    Because the Court recommends declining to exercise supplemental jurisdiction, it need not address zLien's argument that this Court lacks personal jurisdiction over the same claim. *See* (zLien's Mem. in Supp. at 16–17).

third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1).

Rule 20 permits a party to join parties as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332–33 (8th Cir. 1974) (quoting *Gibbs*, 383 U.S. at 724). The test for permissive joinder requires:

> (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action.

*Id.* at 1333.

Safeguard does not allege zLien is liable to Safeguard for Homestar's claims against Safeguard, and therefore, Rule 14 is not applicable. Additionally, zLien cites no case law for the proposition that a party mislabeling its claim requires dismissal. *See* (zLien's Mem.in Supp. at 18–20).

To the extent zLien's argument is construed as one asserting that it is not properly joined, the Court disagrees. Pursuant to the Court's preceding analysis of Safeguard's counterclaim against zLien, the only remaining claim is Safeguard's claim for declaratory relief for zLien's filing of invalid mechanics' liens, which is also asserted against Homestar. *See* (Am. Answer & Countercl. at 29–33). Safeguard alleges Homestar used zLien to file at least thirty-four invalid mechanics' liens in fourteen states and that Homestar and zLien continue to file mechanics'

21

liens. (*Id.* at 29, 31). Thus, the claims arise out of the same transaction or occurrence and questions of law and fact are common to Safeguard, Homestar, and zLien. *See Mosley*, 497 F.2d at 1332–33.

Safeguard argues that even if it needed the Court's permission to add a claim against zLien, it filed a stipulation reflecting its permission to do so. (Safeguard's Mem. in Opp'n at 22); *see* (Stipulation to Extend Time for Safeguard to Amend its Answer to Assert a Countercl. Against Pl.) [Doc. No. 11].[14] But Safeguard's stipulation with Homestar did not mention the addition of zLien as a party defendant to its counterclaim against Homestar. *See* (*id.*). Nonetheless, to the extent zLien argues Safeguard was required to obtain Court permission to become a party to this case—regardless of what rule allowed it to do so—the Court disagrees that this technical, procedural deficiency warrants dismissal.

Additionally, Safeguard's Amended Answer and Counterclaim was timely filed. The pretrial scheduling order requires the parties to serve and file motions to amend pleadings to add parties on or before April 1, 2015. (Pretrial Scheduling Order) [Doc. No. 30 at 1]. Safeguard's Amended Answer and Counterclaim was filed on January 5, 2015, and zLien answered the counterclaim on March 16, 2015. (zLien's Answer to Counterclaimant Safeguard's Countercl.) [Doc. No. 27]. Further, zLien has not alleged any prejudice or any other reason Safeguard's counterclaim against it should not be handled within the same action as Safeguard's counterclaim against Homestar, regardless of whether it is labeled as a third-party complaint or a counterclaim and regardless of any procedural deficiency. (zLien's Mem. in Supp. at 18–19). "Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or

---

[14]    The Court did not issue an order with respect to this stipulation. Nonetheless, Safeguard filed its Amended Answer and Counterclaim on January 5, 2015, and no party alleged any impropriety on Safeguard's part until this motion.

make such other orders as will prevent delay or prejudice." *Mosley*, 497 F.2d at 1332. zLien participated in the pretrial scheduling conference on March 23, 2015, and did not move for judgment on the pleadings until April 27, 2015. (Minute Entry Dated Mar. 23, 2015) [Doc. No. 29]; (Mot. for J. on the Pleadings). zLien's response to the counterclaim and subsequent participation in this case without moving for dismissal demonstrates that it has not suffered any prejudice as a named party.

Therefore, to the extent zLien argues it is not a proper party, the Court recommends denying zLien's Motion for Judgment on the Pleadings.

## IV.    CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Safeguard Properties Management, LLC's ("Safeguard") Motion for Leave to File Supplemental Counterclaim [Doc. No. 31] is **DENIED**.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Counter Defendant Express Lien, Inc., d/b/a zLien's ("zLien") Motion for Judgment on the Pleadings [Doc. No. 43] be **GRANTED in part** and **DENIED in part** as follows:

1.   To the extent zLien seeks judgment on the pleadings with respect to Count Four, tortious interference with business relationships, and Count Five, tortious interference with contractual relationships, the Court recommends the motion be granted, Count Four and Count Five be dismissed without prejudice, and Safeguard be permitted to fila an amended counterclaim within thirty days of an order adopting this recommendation.

2.      To the extent zLien seeks judgment on the pleadings with respect to the unauthorized practice of law claim arising under Minnesota state law, the Court recommends the motion be granted and this claim be dismissed with prejudice;

3.      To the extent zLien seeks judgment on the pleadings with respect to the unauthorized practice of law claim arising under the laws of Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Massachusetts, New York, Ohio, Pennsylvania, and Texas, the Court recommends the motion be granted and this claim dismissed without prejudice; and

4.      The Court recommends the motion be denied in all other respects.

Dated: December 2, 2015

                                                     *s/Steven E. Rau*
                                                     _____
                                                     STEVEN E. RAU
                                                     United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.