# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| HomeStar Property Solutions, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Safeguard Properties, LLC, and Bank of America, N.A.,<br><br>       Defendants,<br><br>and<br><br>Safeguard Properties, LLC,<br><br>       Counterclaim Plaintiff,<br><br>v.<br><br>HomeStar Property Solutions, LLC,<br><br>       Counterclaim Defendant. | Case No. 14-cv-4531 (SRN/DTS)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Andrew D. Parker, Anthony G. Edwards, Christopher M. Daniels, and Russell M. Spence, Jr., Parker Daniels Kibort LLC, 123 North Third Street, Suite 888, Minneapolis, MN 55401, and Todd C. Pearson, Pearson Law Office, 601 Carlson Parkway, Suite 1050, Minnetonka, MN 55305 for Plaintiff and Counterclaim Defendant.

Joseph J. Santoro and Markus E. Apelis, Gallagher Sharp, Sixth Floor Buckley Building, 1501 Euclid Avenue, Cleveland, OH 4115, and Brian A. Wood, Lind Jensen Sullivan & Peterson, PA, 901 Marquette Ave South, Suite 1300, Minneapolis, MN 55402 for Defendants and Counterclaim Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

This is a complicated commercial litigation matter between two businesses that "preserve properties" on behalf of banks while those properties are in foreclosure: Plaintiff Homestar Property Solutions LLC (hereinafter "Homestar") and Defendant Safeguard Properties LLC (hereinafter "Safeguard"). Homestar, which served as an independent contractor for Safeguard for approximately two years, accuses Safeguard of failing to pay it (and/or underpaying it) for services it provided, thereby causing it to fall behind on its bills and, eventually, go out of business. Safeguard adamantly rejects this narrative, and, in turn, accuses Homestar of failing to abide by the companies' contract regarding mechanics' liens, which it alleges caused it to incur damages.

After years of on-and-off again discovery, punctuated by a final settlement and judgment that was later vacated (*see generally* Doc Nos. 127-54), Safeguard moved for summary judgment on the following claims: **(1)** Homestar's breach of contract claim; **(2)** Homestar's unjust enrichment claim; **(3)** Homestar's promissory estoppel claim; **(4)** Homestar's account stated claim; and **(5)** Safeguard's breach of contract counterclaim against Homestar. (*See* Safeguard's Br. in Support of Summ. J. [Doc. No. 163] ("Safeguard Primary Br."); Safeguard's Br. in Support of Summ. J. on its Counterclaim [Doc. No. 168] ("Safeguard Counterclaim Br.").) In addition, Bank of America, also represented by Safeguard's counsel, per an indemnification agreement between the two companies, moved for summary judgment on **(6)** Homestar's solo unjust enrichment claim against it. (*See* Bank of America's Summ. J. Br. [Doc. No. 173] ("BANA Br."); *see id*. at n.7 (noting this indemnification agreement).) Homestar opposed all of these motions. (*See* Homestar's Br. in Opp. to Summ. J. [Doc. No. 189] ("Homestar Primary

Opp. Br."); Homestar's Br. in Opp. to Counterclaim Summ. J. [Doc. No. 207] ("Homestar Counterclaim Opp. Br."); Homestar's Br. in Opp. to Bank of America Summ. J. [Doc. No. 209] ("Homestar BANA Opp. Br.").)[1]

On September 20, 2018, following an extensive oral argument on Safeguard's primary summary judgment motion (*i.e.*, counts 1-4 listed above), the Court denied summary judgment from the bench. (*See* Sept. 20, 2018 Minute Entry [Doc. No. 223].) The Court then took Safeguard's counterclaim summary judgment motion and Bank of America's unjust enrichment summary judgment motion under advisement (*i.e.*, counts 5-6 listed above), to be decided on the papers. (*Id.*)[2]

In an effort to streamline this case as the parties prepare for trial, the Court will now render its decision on the latter two motions; a written decision further explaining the Court's denial of Safeguard's primary summary judgment motion will be issued in due course. As detailed below, the Court grants in part Safeguard's motion seeking summary judgment on its counterclaim, and grants in whole Bank of America's motion seeking summary judgment on Homestar's unjust enrichment claim. The Court will discuss each motion in turn.

**I.  Safeguard's Breach of Contract Counterclaim Against Homestar**

---

[1]  Safeguard and Bank of America also filed reply briefs. (*See* Safeguard Primary Reply Br. [Doc. No. 215]; Safeguard Counterclaim Reply Br. [Doc. No. 217]; BANA Reply Br. [Doc. No. 219].)

[2]  At this hearing, the Court also set this case for trial on the Court's January 14, 2019 trial calendar. However, due to settlement negotiations and scheduling difficulties, the Court subsequently postponed trial until May 6, 2019. (*See* Doc. No. 252.)

### A. Background

As the primary summary judgment briefing demonstrates, the parties dispute arguably hundreds of discrete billing records and fees. The Court need not recount that history in deciding this motion, though, because Safeguard's breach of contract counterclaim centers around a much narrower issue: Homestar's contractual responsibilities with respect to mechanics' liens.

In short, Safeguard began contracting with Homestar in 2012; Homestar provided, "on an as-needed basis, repair and construction services for residential properties in repair as part of the property preservation process associated with foreclosed properties." (Safeguard Counterclaim Br. at 3.) Homestar, in turn, often contracted out its work to subcontractors. (*See* Safeguard Ex. B [Doc. No. 169-3] at 21 ("Breese Dep.").) As Safeguard's independent contractor, Homestar agreed to abide by various contractual provisions, with respect to both its own conduct and its sub-contractors' conduct. (*See* Safeguard Ex. C [Doc. No. 169-4] ("Vendor Acknowledgement Forms"); Breese Dep. at 147-49 (agreeing that he signed these contracts on behalf of Homestar after reading them beforehand).)

Two contractual provisions are of note here. First, Homestar agreed to waive its right "to claim any liens, including mechanic's liens, against any property (or improvements thereon)," upon which it worked, and also agreed to "obtain a Lien Waiver from all of [its] subcontractors who [it] hire[d] to perform work for Safeguard on [its] behalf." (*Id.* (the "Lien Waiver Provision").) Second, Homestar agreed to indemnify

Safeguard against "all claims, liabilities, costs and expenses, including, without limitation, litigation costs, attorney's fees, settlement costs, judgments, taxes, interest, penalties or fines, resulting from and including," it or its subcontractors' "placing a lien on any property for which they performed work on behalf [of] Safeguard." (*Id.* (the "Lien Indemnification Provision").)

Despite these provisions, in mid-2014, Homestar filed mechanics' liens on 49[3] different properties, spread across 15 states: Alabama, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Massachusetts, Minnesota, New York, Ohio, Pennsylvania, and Texas. (*See* Safeguard Ex. D [Doc. No. 169-5] ("Homestar Liens") (attaching copies of all 49 liens); Breese Dep. at 150-51 (admitting that Homestar filed these liens, in knowing violation of the contract).) Homestar did this because it believed that Safeguard had "failed to timely pay" it with respect to work Homestar performed on those properties. (*See* Michael Breese Aff. in Opp. to Safeguard Counterclaim [Doc. No. 206] ¶ 4 ("Breese Aff.").) Homestar later withdrew these liens after Safeguard filed the at-issue counterclaim, in an effort "to be cooperative." (Breese Dep. at 150.)

Importantly, however, Homestar was not the only entity to file, or threaten to file, mechanics' liens on properties connected to Safeguard's work. 16 of Homestar's subcontractors also filed, or threatened to file, mechanics' liens on properties in eight different states: Alabama, Florida, Georgia, Maryland, Minnesota, New Hampshire, Ohio, and Wisconsin. (*See* Meyer Aff. in Support of Safeguard Counterclaim [Doc. No.

---

[3] Although Safeguard initially stated that Homestar filed 45 liens, it later clarified that it meant 49 liens. (*See* Safeguard Counterclaim Reply Br. at 3 n.1.)

5

169-1] ¶¶ 8-11 ("Meyer Aff.").) The subcontractors did this because Homestar was not paying them. (*Id*. ¶ 8.) Although Safeguard's records showed that it had fully paid Homestar for the work associated with the subcontractors' complaints, Safeguard nonetheless paid the 16 subcontractors $203,401.73, over 22 payments, "to avoid significant disputes with Safeguard's own clients as a result of improperly placed mechanics' liens." (*Id*. ¶ 9; *see also* Safeguard Ex. 1 [Doc. No. 169-2] ("Subcontractor Payments") (showing copies of each check that Safeguard paid).) Homestar disputes that Safeguard "paid Homestar in full for the work which [was] the subject of the mechanics' liens filed by Homestar's subcontractors." (Breese Aff. ¶ 8; *but see* Meyer Supp. Aff. in Support of Safeguard Counterclaim [Doc. No. 218-1] (providing a detailed chart showing that Safeguard paid Homestar in full for the work performed on the at-issue properties, with the exception of one $913.75 payment).)

    **B. Discussion**

A court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party." *Grinell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012). However, a party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

To prevail on a breach of contract claim under Minnesota law, a party must show: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). However, if a contract violates the law of a state, it is void against public policy. *See United Steelworkers of Am., Local 6115 v. Quadna Mountain Corp.*, 435 N.W.2d 120, 122 (Minn. Ct. App. 1989) (noting that, "[i]f a contract transgresses law or public policy, it is void," and that "the legislature may set the public policy of the state through statute"). Moreover, Minnesota courts will not "enforce an indemnification agreement if it is contrary to public policy." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 791 (Minn. 2005); *see also Zerby v. Warren*, 210 N.W.2d 58, 64 (1973) (concluding that an indemnity agreement that seeks to relieve a party of the consequences of a violation of a public duty imposed by statute is void).

As an initial matter, the contract's Lien Waiver Provision is unenforceable in Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Minnesota, and New York. (*See* Homestar Counterclaim Opp. Br. at 6-8 (gathering citations showing that mechanic lien waivers are prohibited by statute in those states); Safeguard Counterclaim Reply Br. at 2-3 (conceding this point).)[4] Therefore, Homestar

---

[4] In Minnesota, for example, Minn. Stat. § 337.10, subd. 2, states that "[p]rovisions contained in, or executed in connection with, a building and construction contract requiring a contractor, subcontractor, or material supplier to waive the right to a mechanics lien or to a claim against a payment bond before the person has been paid for the labor or materials or both that the person furnished are void and unenforceable."

7

did not breach the contract merely by filing mechanics' liens for purportedly missing payments on the properties situated in those ten states. Similarly, the Court cannot require Homestar to indemnify Safeguard for any attorneys' fees or costs it incurred with respect to liens filed by Homestar or Homestar's subcontractors in those ten states; to do so would be to relieve Safeguard of the consequences of its illegal contract. *See Zerby*, 210 N.W.2d at 64. This principle holds true even though Safeguard arguably only paid Homestar's subcontractors to maintain good business relations, rather than to fulfill debts that Safeguard actually owed. (*See* Meyer Aff. ¶ 9.)[5]

That said, Homestar undoubtedly breached the contract's Lien Waiver Provision when it and/or its subcontractors filed mechanics' liens on properties located in Alabama, Idaho, Iowa, New Hampshire, Ohio, Pennsylvania, Texas, and Wisconsin, as those states *do* allow parties to contract away their right to file a mechanic's lien. (*See* Homestar Counterclaim Opp. Br. at 7-8 (conceding this point).) This distinction matters because, although the contract was signed in Minnesota, mechanics' liens are governed by the law of the state where the property is located (and hence where the contract is being performed). *See Nat. Glass, Inc. v. J.C. Penny Props., Inc.*, 336 Md. 606, 612 (Md. Ct. App. 1994) ("Generally, the law of the state where the real property is located governs the creation of a mechanic's lien.") (citing 2 Joseph H. Beale, A Treatise on the Conflict

---

[5] *Yang* and *Zerby* preclude the Court from adopting Safeguard's argument that the Lien Waiver Provision and Lien Indemnification Provision are two entirely separate issues, and that Homestar can be held liable for breaching the Lien Indemnification Provision even if Homestar did not breach the (void against public policy) Lien Waiver Provision. (*See* Safeguard Counterclaim Reply Br. at 4.) As the Court sees it, the two provisions are inextricably intertwined.

of Laws, § 230.1, at 949). Accordingly, with respect to properties in those states, Homestar *is* contractually obligated to indemnify Safeguard for both the attorneys' fees Safeguard incurred in forcing Homestar to remove its own liens, as well as the costs Safeguard incurred when it paid Homestar's subcontractors to remove their liens. Based on the parties' submissions, it appears that 26 of Homestar's liens were filed in lien-waivable states, and that Safeguard paid $60,187.39 to subcontractors to remove liens in lien-waivable states.[6]

In response, Homestar argues that Safeguard breached its initial obligation of payment first, and thereby relieved Homestar (and its subcontractors) of their contractual duty to refrain from filing mechanics' liens. *See MTS Co. v. Taiga Corp.*, 365 N.W.2d 321, 327 (Minn. Ct. App. 1985) ("A rule in the law of contracts is that a party cannot raise to its advantage a breach of contract against another party when it has first breached the contract itself."). The problem with this defense is that Homestar has not provided any particularized evidence from which a reasonable juror could conclude that Safeguard did, in fact, breach its contractual duties with respect to work Homestar and/or its subcontractors performed on the at-issue properties. As the supplemental affidavit of Steve Meyer's demonstrates, Safeguard has accounted for every work order related to an

---

[6] The Court found this number by adding together the checks listed in Safeguard's Exhibit 1 (Doc. No. 169-2) that were issued to a subcontractor based in a lien-waivable state. Specifically, the Court added together checks payable to "Pyramid Services LLC" in Wisconsin ($10,940), "Ward & Wilson LLC" in Alabama ($3,160), "Joseph Anthony" in Texas ($16,859.39), "David Huffman" in Ohio ($16,000), FBG Construction in Texas ($11,278), and "Peniel Environmental" in New Hampshire ($1,950). However, as the Court notes below, it will give Safeguard an opportunity to correct the Court's accounting, if necessary.

9

at-issue lien, and has shown that it either paid Homestar's invoice in full, or paid Homestar the appropriate amount due under the parties' contract. (*See* Doc. No. 218-1.) Homestar does not point to evidence to the contrary, much less "specific facts" to the contrary. *Ingrassia*, 825 F.3d at 896. Indeed, in contrast to Mr. Meyer's detailed affidavit for Safeguard, Mr. Breese's affidavit merely offers generalized defenses that Safeguard "did not timely pay Homestar," and therefore materially breached the parties' contract. (*See* Breese Aff. ¶¶ 4, 8.) Suffice it to say, that is not enough to send Safeguard's counterclaim to the jury.[7]

For these reasons, the Court grants Safeguard's motion for summary judgment in part. Safeguard must file an affidavit listing the specific costs it believes it is entitled to under this Order. Moreover, at a future date the Court will entertain a motion for reasonable attorneys' fees in accordance with this Order and the Court's bifurcation schedule, if necessary. (*See* Feb. 3, 2016 Bifurcation Order [Doc. No. 85].)

---

7   This is different than Homestar's primary summary judgment opposition and accompanying oral argument, where it at least pointed to several examples of *specific* work orders that it disputed. (*See, e.g.*, Homestar Primary Opp. Br. at 10-19.) Here, Mr. Meyer's chart lists the following work orders related to at-issue liens: A-006, A-087, A-098, D-079, E-011, F-010. (*See* Doc. No. 218-1; *see also* Safeguard Ex. A-2 [Doc. Nos. 164-4 to 164-9] (detailing Safeguard's accounting for the 578 work orders at issue in this litigation).) However, nowhere in Homestar's briefing – whether in opposition to this motion or in opposition to Safeguard's primary summary judgment motion – does Homestar raise a factual dispute as to Safeguard's analysis of these *specific* work orders.
   Similarly, Homestar only offers generalized disputes to the work orders listed by Mr. Meyers as "not included on Homestar's AR [Accounts Receivable] Spreadsheet," which is the spreadsheet underlying this entire litigation. (*See, e.g.*, Homestar Primary Opp. Br. at 9-10 (summarily asserting that Homestar may also be entitled to damages for improperly-paid work orders not included on the AR spreadsheet); *see also* Safeguard Ex. A-1 [Doc. No. 164-2] ("AR Spreadsheet").)

## II. Homestar's Unjust Enrichment Claim Against Bank of America

### A. Background

Although this dispute primarily centers around Safeguard and Homestar, Bank of America plays a part in this matter as well. Bank of America ("BANA") hired Safeguard to conduct "property preservation" for properties that BANA serviced (or owned through foreclosure), and Safeguard, in turn, hired Homestar. (*See* Jacqueline Bailey Aff. [Doc. No. 174-1] ("Bailey Aff."); *see also* Homestar BANA Opp. Br. at 5 (noting that, "of the 578 projects in dispute in this case, no fewer than 339" were BANA-serviced properties).) Payment between the three entities worked as follows: (1) Homestar would send Safeguard an invoice; (2) Safeguard would review the invoice and adjust it pursuant to the parties' contract (if necessary, and sometimes in a manner disputed by Homestar), and pay Homestar accordingly; (3) Safeguard would then invoice BANA the amount of the adjusted invoice; and (4) BANA would pay Safeguard in accordance with that invoice. (*See* Meyer Supp. Aff. in Support of BANA Summ. J. Motion [Doc. No. 220] ¶¶ 5-8 ("Meyer Supp. Aff."); Meyer Dep. [Doc. No. 210-1] at 25-26.)

Although Homestar contends that *Safeguard* has not paid it in full, it is essentially undisputed that BANA has "paid Safeguard for the work invoiced, [and] no payments remain due to Safeguard [from BANA] with respect to work performed by Homestar." (Bailey Aff. ¶ 4; *accord* Meyer Dep. at 25; Breese Dep. [Doc. No. 174-3] at 62-63 (admitting that he has no personal knowledge that BANA has not paid Safeguard in full).) It is also not disputed that Safeguard is contractually required to indemnify BANA for any costs related to this litigation. (*See* Bailey Aff. ¶ 3.)

On these facts, Homestar brought a one-count claim of unjust enrichment against BANA.

**B. Discussion**

As the Court noted above, a court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party." *Grinell Mut. Reinsurance Co.*, 685 F.3d 697. However, a party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia*, 825 F.3d at 896.

"In Minnesota, to state a claim for unjust enrichment, 'the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay.'" *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1099 (D. Minn. 2017) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). This law operates in conjunction with Minnesota law barring plaintiffs from obtaining a "double recovery." *Howard v. Frondell*, 387 N.W.2d 205, 208 (Minn. Ct. App. 1986) (holding that an "unjust enrichment" claim failed because "[t]here can be no double recovery").

Homestar's unjust enrichment claim fails at summary judgment. First, Homestar has not pointed to any facts showing that BANA "knowingly received" services from Homestar for which BANA "in equity and good conscience should pay." *Luckey*, 245 F.

Supp. 3d at 1099. The record shows that BANA paid Safeguard the amounts that Safeguard invoiced it in full, and did not play any role in the disputed "adjusted invoices" that comprise the heart of this litigation.[8]

Moreover, given the relationship between the three parties, allowing Homestar's claim against BANA to advance would add nothing to this litigation, and could only result in Homestar receiving an inappropriate double recovery. As BANA helpfully explained in its reply brief:

> Whether Safeguard properly adjusted Homestar's invoices pursuant to their separate contract is irrelevant to Homestar's claim against [BANA]. If Safeguard improperly adjusted Homestar's invoices, liability lies with Safeguard, not [BANA]. If, on the other hand, Safeguard properly reduced Homestar's invoices for Homestar's failure to adhere to the parties' contractual and industry guidelines [as discussed in Safeguard's primary summary judgment motion], Homestar has no claim against [BANA] as a matter of law because no additional payments are owed. In either instance, [BANA] is not liable to Homestar.
> (BANA Reply Br. at 2-3.)

The Court finds this argument compelling. Further, because Safeguard is contractually obligated to indemnify BANA for any costs related to this litigation, granting summary judgment to BANA on this unjust enrichment claim does not prejudice Homestar's claims against Safeguard. (*See* BANA Br. at 10 n.7.)

For these reasons, the Court grants BANA's motion for summary judgment.

---

[8] Although Homestar argues in its brief that BANA has not sufficiently shown what it meant by "paid Safeguard in full," (*see* Homestar BANA Opp. Br. at 5-7), this argument is not supported by any evidence that would cast BANA and Safeguard's unequivocal affidavits into doubt. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Safeguard Properties' Motion for Summary Judgment on its Breach of Contract Counterclaim Against Plaintiff Homestar Property Solutions is **GRANTED IN PART**, and that Defendant Bank of America's Motion for Summary Judgment is **GRANTED**.

Within 14 days of this Order, Safeguard must file an affidavit detailing the costs it believes it is entitled to under this Order.

The Court will consider a motion for an award of Safeguard's reasonable attorneys' fees at a later date, in accordance with this Order and the Court's bifurcation schedule.


Dated: February 6, 2019                          __/s/ Susan Richard Nelson___
                                                                       SUSAN RICHARD NELSON
                                                                       United States District Judge