# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| HomeStar Property Solutions, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Safeguard Properties, LLC, and Bank of America, N.A.,<br><br>       Defendants,<br><br>and<br><br>Safeguard Properties, LLC,<br><br>       Counterclaim Plaintiff,<br><br>v.<br><br>HomeStar Property Solutions, LLC,<br><br>       Counterclaim Defendant. | Case No. 14-cv-4531 (SRN/DTS)<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Andrew D. Parker, Anthony G. Edwards, Christopher M. Daniels, Russell M. Spence, Jr., and Elizabeth S. Wright, Parker Daniels Kibort LLC, 123 North Third Street, Suite 888, Minneapolis, MN 55401, and Todd C. Pearson, Pearson Law Office, 601 Carlson Parkway, Suite 1050, Minnetonka, MN 55305 for Plaintiff and Counterclaim Defendant.

Joseph J. Santoro and Markus E. Apelis, Gallagher Sharp, Sixth Floor Buckley Building, 1501 Euclid Avenue, Cleveland, OH 4115, and Brian A. Wood, Lind Jensen Sullivan & Peterson, PA, 901 Marquette Ave South, Suite 1300, Minneapolis, MN 55402 for Defendants and Counterclaim Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

As the Court noted in its recent Order addressing this same case, this is a complicated commercial litigation matter between two businesses that "preserve properties" on behalf of banks while those properties are in foreclosure: Plaintiff Homestar Property Solutions LLC (hereinafter "Homestar") and Defendant Safeguard Properties LLC (hereinafter "Safeguard"). (*See also* Feb. 6, 2019 Counterclaim Order [Doc. No. 254] ("Counterclaim Order").)[1] Homestar, which served as an independent contractor for Safeguard for approximately two years, accuses Safeguard of failing to pay it (and/or underpaying it) for services it provided, thereby causing it to fall behind on its bills and, eventually, go out of business. Safeguard adamantly rejects this narrative, and, in turn, accuses Homestar of failing to abide by the companies' contract regarding mechanics' liens, which it alleges caused it to incur damages.

After years of on-and-off again discovery, punctuated by a final settlement and judgment that was later vacated (*see generally* Doc Nos. 127-54), Safeguard moved for summary judgment on the following claims: **(1)** Homestar's breach of contract claim; **(2)** Homestar's unjust enrichment claim; **(3)** Homestar's promissory estoppel claim; **(4)** Homestar's account stated claim; and **(5)** Safeguard's breach of contract counterclaim against Homestar. (*See* Safeguard's Br. in Support of Summ. J. [Doc. No. 163] ("Safeguard Primary Br."); Safeguard's Br. in Support of Summ. J. on its Counterclaim [Doc. No. 168] ("Safeguard Counterclaim Br.").) In addition, Bank of America, also represented by Safeguard's counsel, per an indemnification agreement between the two

---

[1] This Counterclaim Order may also be found at *Homestar Prop. Sols., LLC v. Safeguard Props., LCC*, 2019 WL 469317 (D. Minn. Feb. 6, 2019).

companies, moved for summary judgment on **(6)** Homestar's solo unjust enrichment claim against it. (*See* Bank of America's Summ. J. Br. [Doc. No. 173] ("BANA Br."); *see id*. at n.7 (noting this indemnification agreement).) Homestar opposed all of these motions. (*See* Homestar's Br. in Opp. to Summ. J. [Doc. No. 189] ("Homestar Primary Opp. Br."); Homestar's Br. in Opp. to Counterclaim Summ. J. [Doc. No. 207] ("Homestar Counterclaim Opp. Br."); Homestar's Br. in Opp. to Bank of America Summ. J. [Doc. No. 209] ("Homestar BANA Opp. Br.").)[2]

On September 20, 2018, following an extensive oral argument on Safeguard's primary summary judgment motion (*i.e.*, counts 1-4 listed above), the Court denied summary judgment from the bench. (*See* Sept. 20, 2018 Minute Entry [Doc. No. 223].) The Court then took Safeguard's counterclaim summary judgment motion and Bank of America's unjust enrichment summary judgment motion under advisement (*i.e.*, counts 5-6 listed above), to be decided on the papers. (*Id*.)[3]

On February 6, 2019 the Court granted in part Safeguard's counterclaim summary judgment motion and granted in full Bank of America's summary judgment motion. (*See* Counterclaim Order.) The Court will now render its written decision as to Safeguard's primary summary judgment motion. Although the Court orally denied this motion from the bench with limited explanation, the Court will now take this opportunity to clarify

---

[2] Safeguard and Bank of America also filed reply briefs. (*See* Safeguard Primary Reply Br. [Doc. No. 215]; Safeguard Counterclaim Reply Br. [Doc. No. 217]; BANA Reply Br. [Doc. No. 219].)

[3] The Court has since set this case for trial on its August 19, 2019 trial calendar. (*See* Second Amended Trial Notice [Doc. No. 268].)

that it is granting Safeguard's motion in part and denying it in part. The Court hopes this ruling clarifies, for both parties, what issues remain in play for trial.[4]

## I. BACKGROUND

This case centers around arguably hundreds of disputed work orders, fees, and account statements, and to what extent those disputes cumulatively led Homestar to incur lost profits and other consequential damages. Although both sides agree that the Safeguard-Homestar relationship was governed by a series of written contracts (*see* Compl. [Doc. No. 1] ¶ 81; Am. Answer [Doc. No. 17] ¶ 81), they do not agree if Safeguard properly paid Homestar for all the work Homestar did on Safeguard's behalf between 2012 and 2014 pursuant to those written contracts. Specifically, Homestar produced an "Accounts Receivable" spreadsheet during discovery (the "AR Spreadsheet") that detailed 578 allegedly unpaid and/or underpaid work orders, totaling $1,752,435.40 in direct damages. (*See* Safeguard Ex. A-1 [Doc. No. 164-2] ("AR Spreadsheet").) The work orders detailed in this spreadsheet lie at the heart of this dispute.

In support of its summary judgment motion, Safeguard, by way of its Assistant Vice President of High Risk and Investor Compliance, Steve Meyer, reviewed the AR

---

[4] The Court also acknowledges Safeguard's November 15, 2018 "emergency motion in limine" to exclude approximately 1,500 belated, "unauthenticated" "Homestar accounting documents, profit and loss statements, and income statements." (*See* Doc. Nos. 229-231.) In light of the Magistrate Judge's recent ruling on Safeguard's closely-related "emergency motion for sanctions" (*see* Feb. 27, 2019 Order Denying Motion for Sanctions [Doc. No. 277]), the Court will defer ruling on Safeguard's November 15 motion in limine until a date closer to trial.

Spreadsheet alongside Safeguard's relevant internal records and produced a countervailing, detailed spreadsheet. Safeguard's spreadsheet alleges that, in fact, Safeguard only owes Homestar $129,123.86, arising out of 89 work orders. (*See* Safeguard Ex. A-2 [Doc. Nos. 164-4 to 164-9] ("Safeguard AR Analysis").) Safeguard does not contractually owe Homestar money for the other 489 work orders, Safeguard argues, because either **(a)** it paid Homestar's invoice in full (145 work orders); **(b)** Safeguard properly applied "chargebacks" to Homestar's invoices "based on Homestar's failure to comply with Safeguard's policies, procedures, and guidelines, including failing to provide photographs showing work was completed, failing to complete the approved scope of work, and/or Safeguard application of a bill penalty due to Homestar's failure to timely complete the repairs" (85 work orders); **(c)** Safeguard adjusted Homestar's invoices to reflect "reasonable pricing standards," in accordance with the contract (22 work orders); **(d)** the invoice listed on the AR Spreadsheet was duplicative of another invoice on the Spreadsheet (74 work orders); **(e)** Safeguard approved payment of certain work orders but ultimately did not pay those work orders because of "uncollected and outstanding chargebacks applied to Homestar's account" (11 work orders); or **(f)** "other" reasons justified Safeguard not paying the invoice (152 work orders). (*See* Safeguard Primary Br. at 13-14 (describing categories detailed in Safeguard AR Analysis).)

Homestar, in turn, agrees that Safeguard owes it money for the aforementioned 89 work orders, and also concedes that it cannot contest either the 145 work orders that Safeguard contended it had "paid in full" (*i.e.*, $349,120.07 in claimed direct contract damages, per Mr. Meyer's analysis), or 19 of the 74 work orders Safeguard listed as

5

"duplicative" (*i.e.*, approximately $17,365 in claimed direct contract damages, per the Court's analysis of Mr. Meyer's "duplicates spreadsheet" [Doc. No. 164-10]). (*See* Homestar Primary Opp. Br. at 19.) However, Homestar does contest Safeguard's accounting for a substantial number of the remaining 325 work orders. As such, with respect to direct contract damages, Homestar appears to allege approximately $1,256,826.47 in payments owing, in comparison to Safeguard's proposed $129,123.86.

In particular, Homestar argues that **(a)** Safeguard's penalties for lack of photographic documentation are factually wrong, either because Homestar did in fact upload the photo documentation actually required by the contract, or, if it did not, that was because "Safeguard's own website often malfunctioned" (69 work orders); **(b)** Safeguard had no right to assess penalties for alleged untimeliness, either because the overarching contract (*see* Safeguard Ex. E [Doc. No. 164-15] ("Safeguard Policy Manuals")) did not describe such penalties, or because a Safeguard employee, Paul Dinehart, allegedly agreed with Homestar's co-owner, Michael Breese, to withhold those penalties (*see* Breese Aff. [Doc. No. 208] ¶ 12) (28 work orders); **(c)** Safeguard inappropriately reduced Homestar's invoices for being "in excess of industry standards" without any support for that determination, and in contradiction to Mr. Dinehart's alleged 2014 representation to Mr. Breese that Homestar was Safeguard's "least expensive contractor" (*id*. ¶ 13) (70 work orders); **(d)** Safeguard incorrectly asserted that Homestar's work was "not authorized, not actually performed, or not documented," when, in fact, "all work billed by Homestar was directed by Safeguard, or, in a few instances, performed in the interest of safety and [making] homes [HUD-complaint]" (*id*.

¶ 14) (102 work orders); **(e)** Safeguard failed to establish a basis for the "chargebacks" it assessed on the eleven work orders listed in category "e" of Safeguard's analysis above, and, indeed, contradicted Mr. Dinehart's alleged representation to Mr. Breese that "Safeguard would refrain from taking chargebacks, and that Safeguard would repay Homestar for any chargebacks it had taken in the past" (*id*. ¶ 22) (11 work orders); **(f)** Safeguard inaccurately reduced certain "special projects" payments based on an "reconciliation meeting" in summer 2014 that, according to Homestar employee Keegan Wallace, did not result in the reductions Safeguard listed (*see* Wallace Aff. [Doc. No. 205] ¶ 3) (90 work orders); and **(g)** 55 of the work orders Safeguard claims are "duplicates," are not, in fact, duplicates because "they have different work order numbers, invoice numbers, and/or billed amounts" (Homestar Primary Opp. Br. at 19) (55 work orders).[5]

Importantly, though, Homestar also asserts two other forms of "contractual" damages. First, Homestar argues that Safeguard owes it consequential and/or "reputational" damages because, Homestar alleges, Safeguard's "slow paying" caused Homestar to default on its credit obligations, which in turn "ruined Homestar's reputation in the industry," "fractured [Homestar's] relationships with its subcontractors," and "took Homestar from being a company worth more than $16,000,000 (based on an offer to

---

[5] Together, Homestar noted 425 work orders in its opposition brief, which, when Homestar's concessions are taken into account, is 100 work orders higher than the highest possible number of disputed work orders (325). However, because Homestar listed many work orders in multiple categories, the actual number of directly disputed work orders is approximately 273 (out of 325). As such, it does not appear that Homestar is attempting to collect the full $1,256,826.47 it claims in direct contract damages.

7

purchase Homestar received in 2013) to being an insolvent entity." (Breese Aff. ¶ 21; *accord* Compl. Prayer for Relief (requesting damages for harm done to Homestar's "business reputation").) However, in contrast to the specific work orders it cited in support of its direct damages claim, Homestar does not introduce any specific evidence of Safeguard's "slow paying," nor does it point to a contractual provision Safeguard breached by "slow paying." (*See also* Safeguard Reply Br. at 4 n.3 (noting that Homestar's invoices "did not contain a payment due date or payment deadline," and citing examples).)

Second, Homestar argues that, regardless of whether it can prove its direct contractual damages of $1,256,826.47, Safeguard owes it $1,700,000 (*i.e.*, approximately the amount listed on the AR Spreadsheet), under a "promissory estoppel" theory. (*See* Homestar Primary Opp. Br. at 22-23.) This is so because, in summer of 2014, Safeguard, through Mr. Dinehart, allegedly promised to pay Homestar that amount "in satisfaction of" Safeguard's contractual obligations. (*See* Breese Aff. ¶¶ 18-19; *but cf.* Safeguard Reply Br. at 24-26 (noting that Mr. Breese's deposition testimony directly contradicts his affidavit); Safeguard Primary Br. at 22 (noting that, in his affidavit, Mr. Dinehart flatly denied that such a promise was ever made).)

## II. DISCUSSION

### A. Standard of Review

A court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A party opposing summary judgment "'must set forth specific facts

showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)). However, in considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party," *Grinell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012), and must not "weigh the evidence and determine the truth of the matter itself," *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012). "In essence," the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B. Breach of Contract

To prevail on a breach of contract claim under Minnesota law, a plaintiff must show: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Further, "in a breach of contract case, [a] plaintiff is limited to damages flowing only from such breach"; "damages which are speculative, remote, or conjectural are not recoverable." *In re RFC & ResCap Liquidating Trust Litig.*, 332 F. Supp. 3d 1101, 1191 (D. Minn. 2018) (cleaned up); *accord St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, 994 F. Supp. 2d 1033, 1046-47 (D. Minn. 2014) (observing that Minnesota law bars a plaintiff from recovering "consequential damages" in a contract action unless the damages were "reasonably foreseeable by the contracting parties at the

9

time of the breach"). Moreover, with respect to lost profits, a plaintiff must show that "(a) profits were lost, (b) the loss was directly caused by the breach . . . , and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008) (quoting *B & Y Metal Painting, Inc. v. Ball,* 279 N.W.2d 813, 816 (Minn. 1979)); *accord Reuter v. Jax, Ltd., Inc.*, 711 F.3d 918, 920 (8th Cir. 2013).[6]

Here, with respect to Homestar's breach of contract claim, there are clear, material factual disputes as to Homestar's performance and Safeguard's breach on dozens of work orders. Although Safeguard argues that Mr. Breese's affidavit and accompanying documentation are not specific enough to rebut Mr. Meyer's detailed accounting, the Court finds that such arguments merely go to Mr. Breese's credibility. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."). On any number of the 270-some work orders Homestar specifically referenced in its opposition motion, a reasonable juror might find that Homestar fully performed on its contractual obligation, and that

---

[6] Although Safeguard correctly points out in its reply brief that "[i]n general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort," *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996), Safeguard incorrectly extends this holding to argue that "business reputation losses" are a kind of "extra-contractual damage" and that Homestar therefore "cannot recover lost reputation damages as a matter of law." (Safeguard Reply Br. at 4-5.) To the contrary, Minnesota law holds that, in a breach of contract suit, "injury to business reputation is compensable by money damages." *Upsher-Smith Lab., Inc. v. Mylan Lab., Inc.*, 944 F. Supp. 1411, 1436 (D. Minn. 1999). Of course, the same limitations outlined above apply to "business reputation losses," too.

Safeguard breached its duty when it failed to pay Homestar the amount listed under Homestar's invoice, or the amount the parties had agreed to through subsequent modifications. (*See* Breese Aff. ¶¶ 12, 13, 22; *accord Mollico v. Mollico*, 628 N.W.2d 637, 642 (Minn. Ct. App. 2001) ("Parol evidence is admissible to show a subsequent modification of an original contract.").) This is especially so for work orders where Safeguard reduced Homestar's invoice based on arguably ambiguous contractual criteria, such as the property photograph requirements or the "reasonable industry standard" requirements. (*See* Homestar Primary Opp. Br. at 10-12, 14; *accord Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) ("[T]he interpretation of an ambiguous contract is a question of fact for the jury.").)[7]

However, the Court also finds that Homestar has *not* raised a genuine dispute of material fact with respect to its alternative argument that Safeguard's pattern of "slow paying" caused Homestar to suffer lost profits and reputational damage. (*See supra* at 8.) As the Court noted above, Homestar adduced no evidence in support of this argument; indeed, it does not even point to to a contractual provision that Safeguard conceivably could have breached with respect to payment timing. As such, because there is no

---

[7] The Court acknowledges the two, unpublished Northern District of Ohio opinions cited by Safeguard, in which the District Court granted Safeguard summary judgment based on a nearly-identical analysis to the one Mr. Meyer performed here. *See Moni 2, Inc. v. Safeguard Props., LLC*, No. 15-cv-307 (CAB), 2016 WL 4801378 (N.D. Ohio Sept. 14, 2016); *II Scorpion, Inc. v. Safeguard Props., LLC*, No. 15-cv-636 (PAG), 2016 WL 4439993 (N.D. Ohio Aug. 23, 2016). Although the two cases are similar to this one (albeit with far fewer disputed work orders), the Court nonetheless finds that, upon close inspection of the record, Homestar has submitted more detailed evidence that either "Moni 2" or "II Scorpion," particularly with respect to various promises that Mr. Dinehart allegedly made to Homestar, on behalf of Safeguard.

11

material evidence of an underlying breach with respect to Safeguard's "slow payments," Homestar cannot ask the jury to award it damages for "lost profits," "consequential damages," or "business reputation losses" "flowing . . . from" that conduct. *In re RFC & ResCap Liquidating Trust Litig.*, 332 F. Supp. 3d at 1191; *accord Moni 2*, 2016 WL 4801378, at *3 (granting Safeguard summary judgment where plaintiff "failed to produce admissible evidence to support the contention that Safeguard breached the contract by failing to pay in a timely manner"); *II Scorpion*, 2016 WL 4439993, at *3 (same). Rather, to recover damages at trial beyond those listed on the AR Spreadsheet, Homestar must prove, by a preponderance of the evidence, that (a) Safeguard breached the parties' contract(s) on a certain number of unpaid and/or underpaid work orders, while proving each breach on a work order-by-work order basis, (b) those specific breaches "directly caused" additional losses, which were reasonably foreseeable by the contracting parties at the time of the breach, and (c) "the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." *Hinz*, 538 F.3d at 984.

Accordingly, with the exception of the aforementioned limitation, the Court denies Safeguard's motion for summary judgment as to Homestar's breach of contract claim.

**C. Promissory Estoppel**

To prevail on a promissory estoppel claim under Minnesota law, a plaintiff must show that "(1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732,

746 (Minn. 2000). However, because promissory estoppel is an "equitable doctrine that implies a contract in law where none in fact exists," *id*. (citation omitted), "an express contract covering the same subject matter will preclude the" doctrine's "application." *Grueling v. Wells Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761 (Minn. Ct. App. 2005). As such, Minnesota courts routinely bar promissory estoppel claims as a matter of law when there is no dispute that a written contract governs the at-issue conduct. *See, e.g.*, *City Center Realty Partners, LLC v. Macy's Retail Holdings*, No. 17-cv-528 (SRN/TNL), 2017 WL 4081896, at *9-10 (D. Minn. Sept. 13, 2017); *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 763, 771 (D. Minn. 2015); *Banbury v. Omnitrition Intern., Inc.*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995).

Here, both parties acknowledge that a series of written contracts governs the work orders Homestar is seeking damages for. (*See* Compl. ¶ 81; Am. Answer ¶ 81.) As such, there is no need to keep a freestanding promissory estoppel claim available as an alternative argument in case the jury rules that a contract does not, in fact, exist. *See, e.g.*, *Krutchen v. Zayo Bandwidth NE, LLC*, 591 F. Supp. 2d 1002, 1018 (D. Minn. 2008) (denying motion to dismiss promissory estoppel claim "pled in the alternative," because, although it appeared that the existence of a written contract barred the claim as a matter of law, the defendant had "not yet answered" and it was "unclear" whether the existence of a contract would be "challenged"). In tacit acknowledgement of this fact, Homestar instead argues that Safeguard's alleged "$1.7 million oral promise" to resolve the disputed work orders (*i.e.*, to pay the entire amount listed on the AR Spreadsheet) constituted a "separate and distinct" obligation on Safeguard's party, and that "the

13

presence of a binding contract" therefore "has no effect on, and certainly does not bar, Homestar's claim for promissory estoppel." (Homestar Primary Opp. Br. at 22.)

The Court disagrees. Homestar's promissory estoppel claim is inseparable from its breach of contract claim; they are simply two different ways of arguing to the jury that Safeguard owes it money for the allegedly unpaid and/or underpaid work orders listed on the AR Spreadsheet. Indeed, to allow Homestar to argue to the jury that Safeguard owes it $1.7 million in promissory estoppel damages based on the word of Mr. Breese alone would be to allow Homestar to evade its obligation of proving its breach of contract case. This is especially concerning given Homestar's concession in its opposition brief that it cannot even prove breach and damages on almost $370,000 of the $1.7 million it claims Safeguard owes it. (*See supra* at 6.) As Judge Frank of this Court noted when addressing an analogous set of facts, "[p]romissory estoppel does not provide a means to evade the fact that the claimant failed to establish breach of the contract; rather, it provides an equitable basis for recovery of a promised benefit where the requirements for the formation of an enforceable contract cannot be met." *Reisdorf*, 129 F. Supp. 3d at 771 (rejecting promissory estoppel claim as a matter of law). Likewise here, the Court will not allow Homestar to use promissory estoppel as "a means to evade the fact" that it might not succeed on proving all or some of its breach of contract claim. *Id*.

Accordingly, the Court grants Safeguard summary judgment as to Homestar's promissory estoppel claim.

**D. Unjust Enrichment**

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). However, as with promissory estoppel, a plaintiff is barred from bringing an unjust enrichment claim "when there is an enforceable contract that is applicable." *Id.*; *accord U.S. Fire Ins. Co. v. Minn. State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn. 1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract"). Consequently, as with promissory estoppel, courts routinely bar unjust enrichment claims as a matter of law when there is no dispute that a written contract governs the at-issue conduct. *See, e.g.*, *City Center Realty Partners*, 2017 WL 4081896, at *11; *St. Jude Medical*, 994 F. Supp. 2d at 1053; *see also Ventura v. Kyle*, 825 F.3d 876, 887-88 (8th Cir. 2016) (dismissing unjust enrichment claim where an "adequate remedy at law," *i.e.*, a defamation claim, was available).

Here, because a written contract governs the relevant subject matter, and because Homestar does not point to any facts distinguishing its unjust enrichment claim from its breach of contract claim, Homestar's claim fails as a matter of law. *Accord City Center Realty Partners*, 2017 WL 4081896, at *11 (dismissing unjust enrichment claim "as a matter of law" where "the facts that support[ed] [plaintiff's] breach of contract claim [were] the same facts that support[ed] its unjust enrichment claim," and plaintiff "ha[d] not alleged or indicated why its legal remedy [was] inadequate"). Although Homestar correctly notes that it is entitled to "*plead* [an] unjust enrichment claim in the alternative to [a] breach-of-contract claim without fear of dismissal" (Homestar Primary Opp. Br. at

15

20-21), that rule does not apply when there is no doubt that a written contract applies. *Cf. Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (denying motion to dismiss unjust enrichment claim "pled in the alternative" when it "could not be readily discerned from the complaint whether [defendant] was a party to plaintiffs' mortgage contracts").

Accordingly, the Court grants Safeguard summary judgment as to Homestar's unjust enrichment claim.

### E. Account Stated

"An account stated is 'a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor.'" *Mountain Peaks Fin. Servs. v. Roth-Steffen*, 778 N.W.2d 380, 387 (Minn. Ct. App. 2010) (quoting *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 345 (Minn. Ct. App. 1997)). To prevail on an account stated claim under Minnesota law, a plaintiff must show "(1) a prior relationship as debtor and creditor, (2) a showing of mutual assent between the parties as to the correct balance of the account, and (3) a promise by the debtor to pay the balance of the account." *Id.* However, because an account stated claim is merely "an alternative means of establishing liability for a debt other than a contract claim," *Westside Equip. Installers, Inc. v. North of Sixty Flying, Inc.*, No. A06-1618, 2007 WL 2107197, at *5 (Minn. Ct. App. July 24, 2007) (citing *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. Ct. App. 1984)), Minnesota courts have barred an account stated claim when there is no dispute that a written contract governs the disputed account. *See, e.g.*, *Tapemark Co. v. E-Z Cleaners, LLC*, No. 10-cv-813 (RHK/TNL),

2012 WL 246053, at *7 (D. Minn. Jan. 25, 2012); *cf. Nelson v. First Nat. Bank of Omaha*, No. A04-579, 2004 WL 2711032, at *2 (Minn. Ct. App. Nov. 30, 2004) ("When proof of an express contract does not exist, liability for a particular debt may be established pursuant to the doctrine of account stated.").

Just as with the prior two claims, the undisputed existence of a written contract bars Homestar's account stated claim as a matter of law. Indeed, in its opposition brief, Homestar does not offer any particularized evidence in support of this claim, and only asserts that the Court should not dismiss this claim because Homestar "has the right to plead in the alternative, even if it is not permitted to recover the same damages under multiple claims." (Homestar Primary Opp. Br. at 24.) However, as the Court noted with respect to Homestar's unjust enrichment claim, that argument is inapposite under the circumstances.

Accordingly, the Court grants Safeguard summary judgment as to Homestar's account stated claim.

### III. ORDER

Based on the submissions and the entire file and proceedings herein, Defendant Safeguard Properties' Motion for Summary Judgment on Homestar's Claims [Doc. No. 161] is **GRANTED IN PART AND DENIED IN PART**. Homestar's promissory estoppel, unjust enrichment, and accounted stated claims are **DISMISSED WITH PREJUDICE**.

Dated: February 27, 2019          s/Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  United States District Judge